UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

EDWIN MALDONADO,

                         Petitioner,                      07 Civ. 5735 (RJH)

                - against -               **MEMORANDUM OPINION**
                                               **AND ORDER**

JOHN BURGE, Superintendent,
Elmira Correctional Facility,

                        Respondent.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

        Petitioner Edwin Maldonado objects to Magistrate Judge Katz's Report and

Recommendation [17] (the "Report"), which recommended that petitioner's petition for a writ of

habeas corpus be denied.  Respondent also objects to portions of the Report.  After reviewing the

record, the Report, and the relevant legal authorities, the Court concludes that petitioner's request

for a writ of habeas corpus should be denied.

## BACKGROUND

        The background and relevant procedural history are set forth in more detail in the Report,

familiarity with which is assumed.

***The Robberies***

        On May 3, 2002, while German Guzman was stopped at a red light in his taxi in the

Bronx, he felt someone reach into his shirt pocket and take his money.  (*See* Trial Tr. Vol. 2,

Sept. 11, 2003 ("Tr. B") at 118-19.)  Mr. Guzman saw the robber's hand, but not his face.  (*Id.* at

120-21.)  After the robbery, Mr. Guzman told the officers called to the scene that the robber had

worn a yellow jacket and blue jeans and that he believed the robber to be Hispanic.  (*Id.* at 130, 132-33, 136-37.)

Melinda Barcene, stopped at the same red light, witnessed the robbery.  (Trial Tr. Vol. 1, Sept. 10, 2003 ("Tr. A") at 12-14.)  At one point, the robber crossed directly in front of her, and she was able to get a close, unobstructed view of his face.  (*Id.* at 28.)  A few days later, Ms. Barcene described the robber to Detective Benny Lucchese as a Hispanic male, 5'9 to 5'10 in height, about thirty years old, in need of a haircut, and with a scar on the right side of his mouth. (Tr. B at 169-70; Tr. A at 46-47.)  Ms. Barcene also gave a clothing description of the robber that matched Mr. Guzman's.  (*Id.*)  From this description, and considering the location of the robbery, Detective Lucchese suspected petitioner of the robbery.  (*See* Wade Hearing Tr. Vol.1, Sept. 3, 2003 ("Wade A") at 85-86, 103.)  Detective Lucchese compiled a six photo spread consisting of petitioner and five other similarly featured men and showed it to Ms. Barcene.  (*Id.* at 88-89.) Ms. Barcene identified petitioner as the man who committed the May 3, 2002 robbery.  (*See* Wade Hearing Tr. Vol. 2, Sept. 8, 2003 ("Wade B") at 172.)

On May 21, 2002, a second robbery occurred.  Tanya Simpson had paid her taxi fare and was waiting for change when a man approached the driver's window and snatched the money from the driver's front pocket.  (Tr. B at 144-46, 149.)  The robber then climbed into the taxi beside Ms. Simpson, held a pistol to her head, grabbed a chain from her neck, and took her wallet.  (*Id.* at 145, 147.)  The robber's unobstructed face was about two feet from Ms. Simpson's face during the robbery.  (*Id.* at 150.)  The driver never reported the robbery, but Ms. Simpson called 911 shortly after leaving the taxi.  (*Id.* at 157-58, 225.)  She met with police officers later in the day and described the robber as a light-skinned black or Hispanic male, about 5'7" in height, about thirty years old, weighing about 140 pounds, with a scar next to his mouth,

and with black hair in a high "afro" hairstyle.  (*Id.* at 158-60.)  She also stated that he had been wearing a blue and red jacket, a blue tee shirt and blue jeans.  (*Id.*)  Ms. Simpson looked through a photo book with approximately seventy photos, including twenty-two Hispanic males, and after about twenty-five minutes, she picked petitioner out of the book.  (*See* Wade A at 6-7, 42.)

Later on May 21, 2002, Detective Glenn Godino arrested petitioner, who was wearing a distinctive bright red "Phillies" baseball jacket with a blue collar and trim, a blue tee shirt with a distinctive caption on the front, and blue jeans. An arrest photo was taken.  (*See* Wade A at 49; Cunningham Aff. Ex. 1 ("Arrest Photo").)  Detective Godino frisked petitioner and searched his person, but did not find any physical evidence linking him to the robberies.  (Tr. B at 257-61, 278.)  The next day, Detective Godino organized a lineup with petitioner and five other Hispanic males.  (Wade A at 16-17.)  All of the men were sitting and wore black stocking caps.  (*Id.* at 18, 67).  A black plastic sheet was placed in front of the men to hide their clothing and thereby avoid undue suggestiveness.  (*Id.* at 18, 67, 69.)  However, photographs of the lineup reveal that the very tops of the men's shirts could be seen over the black sheet and that a small portion of petitioner's blue shirt was visible.  (*See* Pet. Decl. Ex. B ("Lineup Photo").)  It appears from the photo that petitioner's red "Phillies" jacket had been taken off.  (*Id.*)  Both Ms. Barcene and Ms. Simpson separately picked petitioner out of the lineup as the robber in the incidents they had witnessed.  (Wade A at 20-21, 26.)

### *The Wade Hearing*

On September 3, 4, and 8, 2003, the court held a *Wade* hearing to determine if any of the identification procedures had been unduly suggestive.  *See United States v. Wade*, 388 U.S. 218, 232 (1967).  During the hearing, the witnesses described the events as above, but Detective Godino, looking at a complaint report he had not prepared, testified that Ms. Simpson had

described the robber as wearing a red shirt, rather than her actual description of him wearing a blue tee shirt under his red "Phillies" jacket.  (Wade A at 70.)  There was some discussion about whether Ms. Simpson had described a red or blue shirt, during which time the trial judge stated that "[i]f a blue shirt was at any point at all visible during the lineup and the witness has described the fact that a blue shirt was worn during the course of the lineup, that may or may not relate to the suggestibility of the proceeding."  (*Id.* at 68-69.)  However, Detective Godino affirmed that the report referred to a red shirt.  (*Id.* at 71-72.)

At the conclusion of the *Wade* hearing, petitioner's counsel moved to suppress Ms. Barcene's photo-array identification, alleging that the array was tainted because petitioner was allegedly the only person in the photos with a scar.  (Wade B at 193-95, 198.)  The court rejected that motion, stating that the procedure was "eminently fair" and that all the photos showed men who looked very similar.  (*Id.* at 204.)

### The Trial

Petitioner's trial began on September 8, 2003.  The prosecution called four witnesses— Ms. Barcene, Mr. Guzman, Ms. Simpson, and Detective Godino—and relied heavily on the eyewitness testimony of Ms. Barcene and Ms. Simpson's.  Report at 13.  Both women testified that they had a clear look at the robber's face and both made in-court identifications.  (Tr. A at 16-18; Tr. B at 145-46, 150.)  Ms. Simpson testified that the robber wore a blue shirt during the robbery, and that she had previously described the shirt as blue, not red—testimony that clearly called into question the accuracy of the report that Detective Godino had referred to during the *Wade* hearing.  (*See* Tr. B at 159-61, 178-79.)  Ms. Simpson positively identified the arrest photo of the defendant, which she was shown for the first time at trial.  (*See* Tr. B at 161-64.)  Ms. Simpson then testified about the lineup where she had identified the defendant the day after

the attack.  She testified that during the lineup, all the men were covered up to their necks by a

black plastic bag and that they were all wearing black hats.  (*Id*. at 167-68.)  Ms. Simpson did not

mention that the tops of the men's shirts were visible over the black sheet and was not asked

whether she had noticed this fact.  (*See id.*)

Petitioner's trial counsel did not call any of its own witnesses, but relied on cross-

examination of the prosecution's witnesses and a theory of misidentification.  (*See* Report at 14.)

Counsel pointed to inconsistencies in witnesses' testimony, and argued to the jury that the

identification procedures were unfairly suggestive because petitioner was the only one wearing a

blue shirt in the lineup and the top of the shirt was visible over the plastic sheets.  (*See id.*; Tr. B

at 361-77.)

At the conclusion of the trial, petitioner was convicted of two counts of robbery in the

first degree for the May 3, 2002 robbery, and one count of robbery in the third degree for the

May 21, 2002 robbery.  Thereafter, petitioner's counsel moved to set aside the two guilty

verdicts, partly due to the alleged suggestiveness of petitioner's visible blue shirt at the lineup.

(*See* Sentencing Hearing Tr. at 12.)  The court denied the motion.  (*Id.* at 13.)  Petitioner was

sentenced as a second violent felony offender to two concurrent terms of twenty-five years and

one concurrent term of three and one-half to seven years of imprisonment, and to five years of

post-release supervision.  (Report at 15.)

### Petitioner's' Direct Appeal

Petitioner then appealed on numerous grounds, represented by counsel from the Office of

the Appellate Defender.  (*See* Report at 16.)  As is relevant to the present petition, petitioner

contended, among other things, that his Sixth Amendment right to the effective assistance of

counsel had been violated because his trial counsel failed to move to reopen the *Wade* hearing, as

is permitted under N.Y. Crim. Proc. Law. §710.40(4), after learning that Ms. Simpson described the robber's shirt as blue, not red. The Supreme Court, Appellate Division adjudicated the appeal on the merits and found that petitioner had not been deprived of effective assistance. *People v. Maldonado*, 25 A.D. 3d. 423, 423-24 (App. Div. 2006). Petitioner sought leave to appeal to Court of Appeals, but that application was denied. *See id.*, *lv. denied* 6 N.Y. 3d 836 (2006).

### *Petition for Habeas Corpus*

Petitioner then brought the present petition for habeas corpus, reiterating his claim that his Sixth Amendment right to the effective assistance of counsel had been violated because his trial counsel failed to move to reopen the *Wade* hearing after learning that Ms. Simpson described the robber's shirt as blue, not red. Petitioner contends that a reopened *Wade* hearing may have resulted in the suppression of Ms. Simpson's lineup identification as unduly suggestive, which in turn would taint her in-court identification, which in turn would have led to a reasonable probability of a different verdict on the May 21, 2002 robbery charge because Ms. Simpson's testimony was the prosecution's only evidence with respect to that robbery. (*See* Mem. in Supp. of Petition for Habeas Corpus at 29-31; Petitioner's Objections to the Report ("P. Objections") at 7, 10, 12.) The parties agree that petitioner has exhausted his remedies and that the petition is timely.

The petition was referred to Magistrate Judge Katz, who issued his Report on November 7, 2008. The Report recommended that the petition be denied because petitioner had not established that the Appellate Division's decision was contrary to or involved an unreasonable application of *Strickland v. Washington*, 466 U.S. 668 (1984), as would be required in order for a writ to lie under 28 U.S.C. § 2254(d) of the Anti-Terrorism and Effective Death Penalty Act of

1996 ("AEDPA").  Report at 33.  In the course of reaching that conclusion, Judge Katz

independently analyzed whether petitioner had met his burden of satisfying the two-part test set

by *Strickland*, which requires a defendant seeking to establish ineffective assistance of counsel to

prove: (i) that counsel's representation fell below an objective standard of reasonableness (the

"performance prong"); and (ii) that the deficient performance prejudiced the defense (the

"prejudice prong").  466 U.S. at 687.  With respect to the performance prong, Judge Katz noted

that it was plausible that counsel viewed any attempt to reopen the *Wade* hearing as "futile," but

ultimately found that he could not conclude that counsel's failure to move to reopen the *Wade*

hearing was professionally reasonable.  Report at 24, 26.  However, Judge Katz held that

petitioner's ineffective assistance of counsel claim failed under the prejudice prong because

petitioner had not demonstrated that there was a reasonable probability that he would have

succeeded in suppressing the identification had the *Wade* hearing been reopened, and therefore

could not show that there was a reasonable probability that the outcome of the trial would have

been different but for counsel's errors.  *Id.* at 26, 31-32.[1]

Both petitioner and respondent filed objections to the Report.  Petitioner contends that

Judge Katz applied an erroneous legal standard in reviewing petitioner's claims for ineffective

assistance of counsel.  In the alternative, petitioner contends that even if Judge Katz applied the

correct legal standard, that standard was satisfied because there is a reasonable probability that

the lineup identification would have been suppressed at a reopened hearing.  (P. Objections at

10-12.).  Respondent objects to Judge Katz's finding that petitioner's counsel's performance may

have been professionally unreasonable, but agrees with his conclusion that even if it was,

petitioner was not prejudiced in any way.  (Respondent's Objections to the Report at 2.)

---

[1] The Report further recommended that no certificate of appealability be issued and that the court certify, pursuant to
28 U.S.C. § 1915(a)(3), that any appeal from its order would not be taken in good faith.  *Id.* at 34

**DISCUSSION**

Where objections are made to portions of a report and recommendation by a Magistrate Judge, a district court is required to make a *de novo* determination regarding those portions of the report to which objections are made, 28 U.S.C. § 636(b)(1)(C), by reviewing the Report, the record, applicable legal authorities, and the parties' objections and replies. *See Bandhan v. Lab. Corp. of Am.*, 234 F. Supp. 2d 313, 316 (S.D.N.Y. 2002). The court may then accept, reject, or modify in whole or in part recommendations of the Magistrate Judge. *Id.* (citations omitted).

**I.      Standard of Review of State Court's Decision Under AEDPA**

Under AEDPA, there are three sets of circumstances under which a federal court may grant a writ of habeas corpus to a state prisoner: (i) if the state court's denial of relief "resulted in a decision that was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States;" (ii) if the state court's denial of relief "resulted in a decision that . . . involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States;" or (iii) if the state court's denial of relief "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). The phrase "clearly established Federal law, as determined by the Supreme Court of the United States" limits the law governing a habeas petitioner's claims to the holdings (not dicta) of the Supreme Court existing at the time of the relevant state court decision. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Leslie v. Artuz*, 230 F.3d 25, 32 (2d Cir. 2000).

A state court decision is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court on a materially

indistinguishable set of facts. *Williams*, 529 U.S. at 405. The "unreasonable application of federal law" clause is independent of the "contrary to" standard and means more than simply an erroneous or incorrect application of federal law. *See id.* at 411; *see also Henry v. Poole*, 409 F.3d 48, 68 (2d. Cir. 2005). Under this clause, a federal court may grant a writ of habeas corpus "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413; *see also Henry,* 409 F.3d at 68. A federal court reviewing a habeas petition "may permissibly conclude that the federal law has been unreasonably applied by the state court even though not all reasonable jurists would agree that the state court's application was unreasonable." *Henry,* 409 F.3d at 68 (citing *Williams,* 529 U.S. at 409). Ultimately, the inquiry is whether the state court's application was "objectively unreasonable," *Williams,* 529 U.S. at 409, a standard that falls "somewhere between merely erroneous and unreasonable to all jurists." *Henry,* 409 F.3d at 68 (internal quotation marks and citation omitted).

As noted above, the third potential basis for granting a writ of habeas corpus under AEDPA is if the state court decision "was based on an unreasonable determination of the facts in light of the evidence presented . . ." 28 U.S.C. § 2254(d)(2). In this case, the Appellate Division did not premise its decision to deny petitioner's' ineffective assistance of counsel claims on any purely factual findings, nor has petitioner argued that he is entitled to habeas relief on this basis. (*See* P. Objections at 31.) Thus, 28 § 2254(d)(2) is not applicable and will not be discussed further.[2]

---

[2] The Appellate Division did conclude that petitioner's blue shirt was not so distinctive as to draw attention to defendant in the lineup. *Maldonado*, 25 A.D. at 424. However, this conclusion is more appropriately viewed as a mixed question of fact and law, and the reasonableness of that conclusion will be addressed below. Even if it is considered to be factual determination, the Court would not find it to be unreasonable in light of all the evidence.

The preceding discussion makes clear that the standard of review set by AEDPA for the present petition is deferential. This Court is not being called upon to determine whether the state court correctly rejected petitioner's ineffective assistance of counsel claim. *See Williams,* 529 U.S. at 410. Rather, this Court's task is simply to determine whether the state court's rejection of petitioner's Sixth Amendment ineffective assistance of counsel claim was contrary to or involved an unreasonable application of clearly established federal law (as defined above).

## II.   Petitioner's Request for a Writ of Habeas Corpus

### a.  Clearly Established Federal Law

The petition before this Court raises a Sixth Amendment ineffective assistance of counsel claim premised upon counsel's failure to move to reopen a *Wade* hearing to suppress an out-of-court identification that is alleged to have been unduly suggestive. Under AEDPA, the threshold question is whether the claim is governed by any applicable clearly established federal law. Here, it is. Ineffective assistance of counsel claims are "squarely governed by [the Supreme Court's] holding in *Strickland v. Washington*." *Williams,* 529 U.S. at 390. As noted, the Supreme Court established therein a two-prong test to determine whether a defendant's Sixth Amendment right to effective counsel has been violated.

Under the performance prong of *Strickland,* there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." 466 U.S. at 689. In determining whether counsel's performance fell below an objective standard of reasonableness, "a court must bear in mind both that counsel 'has a duty to bring to bear such skill and knowledge as will render the trial a reliable adversarial testing process,' and that counsel must have 'wide latitude' in making tactical decisions." *Henry*, 409 F.3d at 63 (quoting *Strickland,* 466 U.S. at 688, 689). Thus, the court must make "every effort . . . to eliminate the distorting

effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland,* 466 U.S. at 689.

Under the prejudice prong of *Strickland*, petitioner must prove that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* Thus, "[i]t is not enough to show only that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693. On the other hand, it is not necessary to establish that the outcome of the case "more likely than not" would have been different. *Id.*

While it is undisputed that *Strickland* applies to the present petition—and to all Sixth Amendment ineffective assistance of counsel claims—it is not clear precisely how the general standards articulated therein apply to a fact pattern like the one before this Court, in which the ineffective assistance of counsel claim is premised on a failure to make a suppression motion. The Supreme Court's decision in *Kimmelman v. Morrison*, 477 U.S. 365 (1986), provides some guidance regarding the application of *Strickland* in this context, but as the discussion below will show, that guidance is incomplete. In *Kimmelman,* the Supreme Court held that where an ineffective assistance of counsel claim is premised on counsel's failure to make a suppression motion, to satisfy the prejudice prong of *Strickland* the petitioner must prove that the underlying suppression claim was "meritorious" and that "there is a reasonable probability that the verdict would have been different absent the excludable evidence . . ." *Id.* at 375.[3] The requirement that

---

[3] *Kimmelman* itself involved an ineffective assistance of counsel claim based on counsel's failure to move to suppress evidence alleged to have been seized in violation of the Fourth Amendment, but courts have also applied *Kimmelman* to motions to suppress identifications alleged to have been unduly suggestive. *See, e.g., Thomas v. Varner,* 428 F.3d 491, 501-503 (3d Cir. 2005); *Hughes v. Hubbard,* No. 99-56436, 2000 WL 1728113 at *1 (9th Cir. 2000); *but see Lynn v. United States,* 443 F.3d 238 (2d Cir. 2006) (analyzing ineffective assistance of counsel claim premised on failure to move to suppress identification without mentioning *Kimmelman*).

the underlying suppression motion be "meritorious" was articulated in *Kimmelman* as being relevant to the prejudice prong of *Strickland*, but it is also relevant to the performance prong in that counsel's failure to make a suppression motion that is obviously non-meritorious cannot be said to constitute deficient performance. *See Worthington v. United States*, 726 F.2d 1089, 1093-94 (6th Cir. 1984) (Contie, concurring) ("[W]here a suppression motion would be successful, an attorney is guilty of ineffective assistance if he does not file the motion on time . . . Conversely, if such a motion would fail, counsel may not be criticized for having accurately assessed his client's chances of successfully challenging the warrant . . .").

The problem posed by *Kimmelman* is that the Supreme Court did not define "meritorious" and has not done so since then, which has led to some confusion regarding the precise meaning of the rule articulated by that decision. Petitioner contends that a suppression claim is "meritorious" under *Kimmelman* if it is "colorable, viable, has quality, or is substantial"—in other words, if it "has merit and is therefore potentially successful"—and faults Judge Katz for failing to employ this interpretation of *Kimmelman* in the Report. (P. Objections at 3-4, 9.) Thus, petitioner argues that the prejudice prong of *Strickland* is satisfied if he can show that the suppression motion is potentially successful and that if the suppression motion had succeeded, there is a reasonable probability the outcome of the trial would have been different. (*Id.* at 9.) The Court, however, concludes that petitioner's interpretation of the term "meritorious" appears overly broad and, in any event, certainly does not qualify as clearly established federal law within the meaning of AEDPA.

While the Supreme Court never defined what it meant by "meritorious," a complete reading of *Kimmelman* suggests that, at minimum, the Supreme Court intended to set out a higher standard than the standard petitioner urges upon the court. In *Kimmelman*, the respondent

brought an ineffective assistance of counsel claim based on his counsel's failure to move to suppress physical evidence alleged to have been seized from his bedroom without a warrant. 477 U.S. at 368-69. Such a suppression claim would likely have been considered colorable since warrantless searches of the home are generally unconstitutional unless an exception applies. Yet the respondent was not able to prevail on his ineffective assistance of counsel claim simply by alleging that counsel failed to make the suppression claim. Instead, the Supreme Court remanded the case to the trial court to further develop the record with respect to the prejudice prong of *Strickland,* in part because the state had not conceded the illegality of the search and no hearing had been held on the underlying merits of the Fourth Amendment claim. *Id*. at 390-91. The fact that the Supreme Court remanded for further proceedings suggests that the Supreme Court did not mean to imply that a "meritorious" suppression motion is one that is merely colorable, or that the prejudice prong of *Strickland* is satisfied whenever a party raises a colorable suppression claim (and can show that if suppression had resulted, there is a reasonable probability that the outcome of the proceeding would have been different).

The circuit courts have advanced a few different interpretations of *Kimmelman*'s statement that petitioner must have a "meritorious" suppression motion in order to satisfy the prejudice prong of *Strickland*. Several courts have stated or implied that a "meritorious" suppression motion is one that *would* succeed if made.[4] Other courts have stated or implied that

---

[4] *See, e.g., Young v. Renico*, 346 Fed. Appx. 53, 56-59 (6th Cir. 2009) (analyzing the merits of petitioner's Fourth Amendment claim in depth and concluding that it would not have prevailed and therefore could not form the basis of an ineffective assistance claim); *Mosby v. Senkowski,* 470 F.3d 515, 519-21 & n.3 (2d Cir. 2006) (analyzing the merits of the suppression claim in a way that suggests that the court interpreted "meritorious" to mean that the suppression claim would actually succeed); *United States v. Romero-Gallardo*, 113 Fed. Appx. 351, 353 n.1 (10th Cir. 2004) ("Our examination of these documents does not convince us that the affidavit fails to establish probable cause. It is by no means evident that Defendant's suppression argument is meritorious-a necessary prerequisite for a successful ineffective-assistance claim under these circumstances."); *Cuevas v. Chrans*, 3 Fed.Appx. 528, 531 (7th Cir. 2001) (petitioner "was required to demonstrate both that a suppression motion would have succeeded and that, having succeeded, there exists a reasonable probability that the outcome of his trial would have been different."); *Van Tran v. Lindsey*, 212 F.3d 1143, 1156 (9th Cir. 2000), *overruled on other grounds by Lockyer v. Andrade,* 538

to satisfy *Kimmelman,* a petitioner must show that it is *likely* that the suppression motion would have succeeded, or that there is a *reasonable probability* that the suppression motion would have succeeded.[5]

The Court is not aware of any circuit court to have reached the conclusion advanced by petitioner that in order for a suppression claim to be "meritorious" under *Kimmelman*, it need only be colorable or have some potential for success.  The Second Circuit cases cited by petitioner do not so hold.  Petitioner relies heavily on the Second Circuit's statement in *Lynn v. Bliden*, 443 F.3d 238, 249 (2d Cir. 2006), that "[i]n prior habeas cases in which there were claims of ineffective assistance of counsel for failing to request a *Wade* hearing, this Court has demanded some showing of the likelihood of success at the hearing."  Petitioner contends that this language makes clear that he only needs to show that "there is at least a colorable or viable ground for suppression" (and a reasonable probability that the verdict would be different if the lineup had been suppressed) in order to prevail on the present petition.  (P. Objections at 6).

---

U.S. 63 (2003) ("in order to show prejudice when a suppression issue provides the basis for an ineffectiveness claim, the petitioner must show that he would have prevailed on the suppression motion, and that there is a reasonable probability that the successful motion would have affected the outcome"); *United States v. Bland,* 23 F.3d 403, 403 (4th Cir. 1994) ("[Petitioner] has failed to show that the evidence at the suppression hearing would have established an improper search. Without a meritorious Fourth Amendment claim, there is no prejudice under *Strickland*."); *Laaman v. United States,* 973 F.2d 107, 113 (2d Cir. 1992) ("Applying [the standard articulated in *Kimmelman*], it is our view that whether or not Williams had joined in the motion to suppress . . . suppression of the evidence . . . would not have resulted. In other words, for reasons hereinafter stated, we conclude that petitioners' Fourth Amendment claim is not meritorious."); *United States v. Caggiano,* 899 F.2d 99, 102 (1st Cir.1989), *abrogated on other grounds by Horton v. California,* 496 U.S. 128 (1990) ("[i]f the searches and seizures were valid, then defendant's fourth amendment claim is meritless, and he can show no prejudice from his trial attorney's withdrawal of the suppression motions."); *see also Garcia v. Walsh,* No. 08-4622-pr, 2009 WL 3198804, at *1-2 (2d Cir. 2009); *Phillips v. Mitchell,* 187 Fed. Appx. 678, 679 (9th Cir. 2005); *Huynh v. King,* 95 F.3d 1052, 1058 (11th Cir. 1996); *United States v. Owens,* 882 F.2d 1493, 1498-1501 & n. 14 (10th Cir. 1989).

[5] *See, e.g.*, *Belmontes v. Brown,* 414 F.3d 1094, 1121 (9th Cir. 2005), *overruled on other grounds by Ayers v. Belmontes,* 549 U.S. 7 (2006) (requiring a "reasonable probability that a motion to suppress would have succeeded and that the suppression ... would have led to a different out-come at the trial"); *Thomas,* 428 F.3d at 502 ("with respect to the prejudice inquiry, Thomas must show that he would likely have prevailed on the suppression motion and that, having prevailed, there is a reasonable likelihood that he would not have been convicted"); *United States v. Horne,* 203 F.3d 53, 53 (D.C. Cir. 2000) ("[t]he district court correctly held that appellant failed to prove his trial counsel rendered ineffective assistance by failing to move to suppress the contraband recovered from appellant's car. For the reasons stated in the district court's memorandum opinion, appellant has not shown a 'reasonable probability' that a motion to suppress would have been meritorious.").

However, the excerpted statement from *Lynn* must be read in the context of the Court's holding in that case, which rejected an ineffective assistance of counsel claim premised on a failure to request a *Wade* hearing because there was nothing in the record to suggest that had the *Wade* hearing been reopened, the identification would have been suppressed. *Lynn*, 443 F.3d at 249. There is no indication that the Second Circuit in *Lynn* intended to spell out for future litigants precisely how strong the underlying suppression motion must be in order to prevail on an ineffective assistance of counsel claim premised on the failure to make such a motion. Rather, the Court was merely noting that the evidence in that case fell far below any standard that may be relevant because there was no evidence in the record that the identification would have been suppressed had the hearing been reopened.[6]

    As this discussion reveals, there is some uncertainty under federal law as to precisely what showing is required to satisfy *Strickland*'s prejudice prong where the ineffective assistance of counsel claim is premised on a failure to make a suppression motion. The Supreme Court has made clear that as a threshold matter, the suppression motion must be "meritorious," but it is not

---

[6] The other cases cited by Petitioner are similarly unavailing. *Twitty v. Smith*, 614 F.2d 325 (2d Cir. 1979) (rejecting ineffective assistance claim for failure to seek *Wade* hearing where there was no basis for questioning the propriety of the out-of-court identification procedure) and *United States v. Daniels*, 558 F.2d 122 (2d Cir. 1977) (finding no prejudice from counsel's failure to move to suppress out-of-court identification where there was no basis for questioning the propriety of that identification) are unhelpful to petitioner's case for the same reason that *Lynn* is unhelpful to his case. Neither case articulates a standard for how strong a suppression motion must be in order to form the basis of an ineffective assistance of counsel claim; they merely observe that where there is no evidence that the suppression motion would succeed, an ineffective assistance of counsel claim premised on a failure to raise that suppression motion cannot stand. *Twitty*, 614 F.2d at 333; *Daniels*, 558 F.2d. at 126. Petitioner also relies on *United States v. Matos*, 905 F.2d 30 (2d Cir. 1990), which involved an ineffective assistance claim premised on counsel's failure to move to suppress statements alleged to have been unlawfully obtained. In that case, the court concluded after citing *Kimmelman* that there was insufficient evidence in the record for it to determine whether the statements were obtained illegally, the accused having failed to raise the ineffective assistance claim at any point prior to his appeal to the Second Circuit. *Id.* at 32-33. Therefore, the court was unable to determine whether either prong of *Strickland* was satisfied and remanded to the district court for such a determination. *Id.* at 32-33, 35. At no time in *Matos* did the court state that failure to make a suppression claim that was merely colorable, but that would not ultimately succeed, would be enough to sustain an ineffective assistance of counsel claim. Indeed, *Matos*, read as a whole, is arguably consistent with the notion that a suppression motion must be meritorious in the sense that it would actually succeed in order to support an ineffective assistance claim. Finally, *Saltys v. Adams*, 465 F.2d 1023 (2d Cir. 1982), which petitioner also cites, is a pre-*Strickland* case that did not endeavor to answer the question of how strong a suppression motion must be in order for a litigant to be prejudiced by his counsel's failure to raise that claim.

15

entirely clear what "meritorious" means in this context. The weight of the authority and the logic of *Kimmelman* suggest that petitioner must show, at minimum, a reasonable probability that the suppression motion would succeed, and quite possibly that that the suppression motion would in fact succeed. In the end, in light of the incomplete guidance provided by *Kimmelman* and the divergent opinions of the circuit courts, it is probably not possible to treat the rule articulated therein as clearly established federal law and to evaluate the state court's decision against that uncertain standard. At minimum, petitioner's interpretation of *Kimmelman* is not clearly established federal law within the meaning of AEDPA under any analysis. Accordingly, the Court will look to the general standards articulated by the Supreme Court in *Strickland*, as that decision continues to provide "sufficient guidance for resolving virtually all ineffective-assistance-of-counsel claims." *See Williams,* 529 U.S. at 391.

### b. The "Contrary To" Test

The Court has no trouble concluding that the Appellate Division's decision was not "contrary to" *Strickland*. The Appellate Division concluded that petitioner was not deprived of effective assistance of counsel under state or federal standards, citing *Strickland* and reasoning that, "[a]lthough petitioner's counsel did not move to reopen the *Wade* hearing upon learning that one of the robbery victims had described defendant as wearing a blue shirt, the same color he wore at a lineup, this did not deprive defendant of effective assistance [because] such a motion would not have resulted in suppression." *See Maldonado*, 25 A.D. 3d. at 423-24. This conclusion plainly does not represent a legal conclusion opposite to that reached in *Strickland;* rather, it appears to represent the Appellate Division's application of the prejudice prong of *Strickland* to the facts before it.

16

### c.  The "Unreasonable Application" Test

The Court also finds that the Appellate Division's decision was not an unreasonable application of *Strickland.*  While that Appellate Divisions' decision appears to have focused on the prejudice prong of *Strickland*, this Court concludes that petitioner has failed to satisfy the performance prong as well.  Although Judge Katz found that "there is no apparent strategic justification for not moving to reopen the *Wade* hearing" and that it could not "conclude that counsel's failure was professionally reasonable" (Report at 26), this Court respectfully disagrees. Petitioner's trial counsel could reasonably have concluded that moving to suppress the lineup would have been a strategic error.  First, trial counsel could reasonably have concluded that the motion to suppress was unlikely to succeed in light of the facts surrounding the lineup procedure and the New York case law on suggestive identifications (*see discussion*, *infra*), as well as the fact that the trial court had already denied his motion to suppress Ms. Barcene's photo identification.  More importantly, petitioner's trial counsel could reasonably have concluded that even if he did manage to convince the trial court to suppress the lineup identification, there was nothing to suggest that Ms. Simpson's earlier photo book identification of petitioner was improper and would have been suppressed; and further that it was highly unlikely that Ms. Simpson's in-court identification would ultimately have been suppressed as tainted by the lineup since Ms. Simpson's prior independent identification of petitioner from the photo book would support the reliability of her in-court identification.  *See U.S. v. Douglas*, 525 F.3d 225, 242 (2d Cir. 2008) (noting that the central question in determining whether an in-court identification should be suppressed is whether the identification is reliable).  Accordingly, the Court finds that it was a reasonable strategy for petitioner's trial counsel to use the fact that petitioner's blue shirt was visible during the lineup as a jury argument—specifically, to buttress his misidentification

theory by attempting to raise doubt in the jurors' minds as to whether the police has used fair identification procedures—rather than moving to suppress the identification.  Thus, petitioner has failed to establish that his trial counsel's performance was deficient under the performance prong of *Strickland*.

Turning to the prejudice prong, petitioner must show that there was a reasonable probability that, but for counsel's alleged unprofessional errors, the result of the proceeding (here, the trial) would have been different.  *Strickland*, 466 U.S. at 694.  Although the Appellate Division's discussion of its reasons for denying petitioner's ineffective assistance of counsel claim was brief, its decision appears to have been premised on a conclusion that petitioner could not satisfy the prejudice prong because reopening the *Wade* hearing "would not have resulted in suppression" of the lineup under New York state law since the "blue shirt was not so distinctive to draw attention to defendant."[7]  *See Maldonado*, 25 A.D. 3d. at 424.  Obviously, if the suppression motion was denied, the outcome of the trial could not have been different.

Petitioner argues that the Appellate Division's conclusion that the suppression motion would not have succeeded was an unreasonable application of *Strickland*'s prejudice prong .  To the extent that petitioner is arguing that the Appellate Division's underlying analysis of New York law on suggestive identifications was incorrect, that challenge is not cognizable on habeas review.  *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).  "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.  In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."  *Id.*

---

[7] The state court "decision" that is subject to review under AEDPA is the state court's result, not its reasoning.  *See Cruz v. Miller*, 255 F.3d 77, 86 (2d Cir. 2001) ("Although sound reasoning will enhance the likelihood that a state court's ruling will be determined to be a reasonable application of Supreme Court law, deficient reasoning will not preclude AEDPA deference. . ." (citations and internal quotation marks omitted).

Even if it were cognizable, petitioner would not prevail because the Court cannot conclude that the Appellate Division's application of *Strickland's* prejudice prong was objectively unreasonable.  Petitioner argues that there is a reasonable probability that Ms. Simpson's lineup identification would have been suppressed as unduly suggestive because the top of his blue shirt was visible during the lineup, he was the only person in the lineup with a blue shirt, and Ms. Simpson had described him as wearing a blue shirt during the robbery.  (P. Objections at 10-12).  As Judge Katz aptly noted in the Report, New York courts have found lineups to be improperly suggestive in this context only where defendant's clothing was unusual, figured prominently in the witness' description, or if there was evidence that the witness relied on the clothing to identify the suspect in the lineup.  *See* Report at 27-28 (collecting cases). Judge Katz's thorough review of the case law suggests that whether a lineup is unduly suggestive is a fact-specific determination that depends on the totality of the circumstances surrounding the identification.  Here, a blue shirt in itself is not particularly distinctive, which undermines a finding of suggestiveness.  *See, e.g.*, *People v. Gilbert*, 295 A.D.2d 275, 276 (1st Dep't 2002). And while the blue shirt was one feature of Ms. Simpson's description of petitioner, it could hardly be classified as a "prominent" factor, given that she also described petitioner's skin tone, height, hair style and color, weight, age, the scar next to his mouth, and other items of clothing that he was wearing (including a particularly distinctive "Phillies" jacket).  When the facts of petitioner's case are considered as a whole, the Court agrees with the Appellate Division and Judge Katz that the lineup was not suggestive (*see Maldonado*, 25 A. D. 3d at 423-24; Report at 30).  Moreover, regardless whether the Appellate Division's conclusion was correct or not, the Court cannot certainly cannot conclude under the deferential standard of review set by AEDPA

that the Appellate Division's judgment on the issue of suggestiveness rendered its application of *Strickland's* prejudice prong objectively unreasonable.  *See Williams*, 529 U.S. at 409.[8]

## III.    Certificate of Appealability

The Court concludes that petitioner has not made a substantial showing of the denial of a constitutional right, and recommends that no certificate of appealability be issued.  *See* 28 U.S.C. § 2253(c)(2); *Lucidore v. N.Y. State Div. of Parole,* 209 F.3d 107, 112 (2d Cir. 2000).  Although there is some uncertainty under federal law regarding the precise showing required to make out an ineffective assistance of counsel claim premised on a failure to make a motion to suppress, petitioner has not made a substantial showing that he was denied his Sixth Amendment right to the effective assistance of counsel under any reasonable reading of federal law.  In other words, the question whether petitioner was denied his Sixth Amendment right to the effective assistance of counsel is not debatable among jurists of reason and does not deserve encouragement to proceed further.  *See id.*  Pursuant to 28 U.S.C. § 1915(a)(3), any appeal from this Order would not be taken in good faith.  *See Coppedge v. United States,* 369 U.S. 438, 444-45 (1962).

---

[8] Petitioner, who has been represented by counsel throughout these proceedings, did not argue in his petition or in his Objections to the Report that the Appellate Division's conclusion that the lineup would not have been suppressed was contrary to or involved an unreasonable application of clearly established federal law regarding the suggestiveness of identification procedures.  Accordingly, such a contention is not before the Court.  *Se e Ortiz v. Barkley*, 558 F.Supp.2d 444, 451 (S.D.N.Y.2008) (district courts "generally should not entertain new grounds for relief or additional legal arguments not presented to the magistrate.")  Even if such a contention were before the Court, it would not prevail under the deferential standard of review set by AEDPA.  The Supreme Court has not set bright line rules governing the circumstances in which lineups are unnecessarily suggestive or the circumstances in which unnecessarily suggestive lineups will be suppressed; rather, the court has articulated general principles that govern the inquiry, which require nuanced application depending on the circumstances of each case.  *See, e.g.*, *Neil v. Biggers,* 409 U.S. 188, 198-99 (1972); *Manson v. Brathwaite,* 432 U.S. 98, 113-14 (1977).  Those standards make clear that even if a lineup is found to be suggestive, it does not automatically follow that the identification obtained from it should be suppressed if the identification testimony is nonetheless reliable.  *See Neil,* 409 U.S. at 198-99; *Manson,* 432 U.S. at 113-14.  Nothing in the record suggests that the Appellate Division's conclusion that the lineup procedures in this case would not have been suppressed runs afoul of, or is an unreasonable application, the general standards articulated by the Supreme Court.

## CONCLUSION

For the reasons stated above, the Court denies the petition for a writ of habeas corpus

with prejudice and denies petitioner's request for a certificate of appealability. The Clerk of the

Court is directed to close this case.

SO ORDERED.

Dated: New York, New York
     March 23, 2010

 

Richard J. Holwell
United States District Judge

21